E-FILED
Wednesday, 25 May, 2016  04:30:48 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| LELAND J. PEARSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 14-3081 |
| | ) | |
| PATRICK R. DONAHOE, Postmaster General, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Leland J. Pearson has filed a Pro Se Complaint, wherein he alleges that the United States Postal Service failed to hire him and terminated his employment in retaliation for protected activity.

Pending before the Court is the Postmaster General's Motion for Summary Judgment.

That motion is allowed.  Summary Judgment for the Postmaster General is Granted and the case is closed.

## I. OVERVIEW

Plaintiff Leland Pearson filed a Complaint wherein he claimed that on

June 8, 2013, he failed to obtain employment with the United States Postal

Service ("USPS") due to retaliation.   The Plaintiff alleged the following

facts in support of his claim:

> On February 14, 2013, I (Leland Pearson) was interviewed by
> Sheila Smith for a position which I held for over 4 years.   I
> [w]as wrongly accused of being under the influence of alcohol
> and disqualified from my interview.   Springfield Postmaster
> found me on the route 45 minutes later and said he smelled no
> alcohol and allowed me to finish my day.   I filed an EEO
> complaint with no outcome.   I was reinterviewed June 2013 and
> was not hired for reasons of appearance.    However, the
> interviewer was fully aware that an EEO was filed.

Doc. 1, ¶12.

The Defendant seeks summary judgment and claims that the Plaintiff

has failed to establish a causal connection between his prior protected

activity and the USPS employment decision.   Additionally, the Plaintiff has

not established that those who interviewed him and failed to recommend

him for employment knew that he had filed an EEO complaint in the past.

The Defendant further contends the Plaintiff has not shown that an EEO

complaint influenced the USPS employment decision to prevent him from

obtaining an position.

2

The Plaintiff had been employed as a "transitional" mail carrier since January of 2009.  Transitional employees with the USPS did not hold career positions and were not entitled to benefits.  In late 2012, transitional employee positions were terminated and a new position, known as a city carrier associate ("CCA"), was introduced.  Those employed as CCA's would have the possibility of becoming full-time employees with benefits.  As transitional employee positions were terminated, all employees interested in CCA positions were required to file applications and interview for the newly established positions.  CCA positions were open to former transitional employees and also the public.

The Plaintiff applied for a CCA position when 16 positions were open in the Springfield area.  In February of 2013, 81 qualified applicants were interviewed.  The Plaintiff was not offered a position and filed an EEO complaint.  In June of 2013, the Plaintiff was recalled for a job interview but was not offered a position.

The Plaintiff contends that he had the credentials for the CCA position and his failure to obtain the position was the result of retaliation.

The Defendant alleges that the Plaintiff has failed to establish a prima facie case of retaliation.

## II. FACTS

### A. Plaintiff Leland J. Pearson's deposition

There are a number of attributes a mail carrier must have.  The Plaintiff testified that a person who delivers the mail must deal with people who receive that mail.  A mail carrier must also work closely with others and drive a vehicle and work with machinery.  Mail carriers are also required to be both mentally and emotionally stable.

In late 2012, all transitional employees knew that they would have to reapply for CCA positions.  The Plaintiff knew those positions were also open to the public to apply.  There were perhaps 100 applicants being interviewed for the CCA positions on February 14, 2013.  Although the Plaintiff considered himself to be an outstanding applicant, he had no idea how others were rated.  There were other former transitional employee applicants who were not rehired as CCA's.

The Plaintiff was interviewed by Sheila Smith.  The Plaintiff and

4

Smith had not previously met.  The night before his February 14, 2013 interview, the Plaintiff "went out for a few beers" and drank three or four beers.  The Plaintiff was aware of the USPS's regulation that employees must not drink beer, wine or other intoxicating beverages while on duty, begin work or return to work intoxicated or drink intoxicating beverages while in uniform.

The Plaintiff was allowed time from his delivery route to appear for his scheduled interview.  The interview took approximately 15-20 minutes. After the interview, the Plaintiff returned to his mail delivery route.  After approximately 30 minutes, the Plaintiff's supervisor met him on his route and then Postmaster Phil Geraci met them on the route.  The Plaintiff's supervisor and the Postmaster both asked the Plaintiff if he had been drinking.  He denied that he had been drinking.

Later that afternoon, the Plaintiff sat down with Geraci and, after a discussion, the Plaintiff determined to go through the Postal Service's EAP 21-day counseling program, which the USPS made available to employees who had alcohol problems.

5

The Plaintiff believed he should not have been eliminated from the first interview due to the smell of alcohol.  The Plaintiff's opinion was that his qualifications were superior to those of other applicants because "they just are."  The Plaintiff admitted that other job applicants may have had prior experience.  He knew nothing about how the supervisors had rated the employees against whom he measured himself as superior.  The Plaintiff had no specific information pertaining to the quality of work of other transitional employees against whom he measured himself.  He recognized that hiring decisions were based on information received from an array of people who tried to determine the best people to hire.

Although he was not hired following his February 14, 2013 interview, the Plaintiff reapplied again and, in June 2013, was notified he had been selected to come in again for an interview for a CCA position.  Autumn Clark interviewed him for the position.  The interview lasted between 15 and 20 minutes.

The Plaintiff testified that within the post office, many employees engage in gossip.  As a result of gossip, the Plaintiff believed that Autumn

Clark had to know he had previously filed an EEO complaint.  The Plaintiff admitted it was not unusual "in the world of the post office" for an employee to file an EEO complaint.

The Plaintiff believed that the EEO investigator's final determination of his complaint was incorrect, as the investigator concluded that Plaintiff failed to establish a "causal link between . . .  prior protected activity and the adverse employment action," but the Plaintiff was unable to identify any specific point in the investigative report that was incorrect.   The Plaintiff asserted that Geraci promised him that if he completed the EAP program, he would retain his position.  However, the Plaintiff admitted he had no idea whether the postmaster had any control over hiring employees.

B. Declarations of USPS employees

Susan Litterly has been in customer relations with the USPS for the past 20 years.  Her duties include customer satisfaction and hiring the best qualified employees for the USPS.

Sheila Smith, who interviewed the Plaintiff on February 14, 2013, had been with USPS for 25 years, had previously managed the Customer

Service section in Houston, Texas and had been plant manager in Springfield, Illinois. She had been responsible for supervision of clerks, mail handlers and supervisors of distribution operations. Smith was familiar with the duties of a mail carrier.

Autumn Park-Fortney, who interviewed the Plaintiff on June 18, 2013, had been with the USPS since January 1995, had worked herself as a mail carrier and, in her position as a customer service supervisor in the South West Station in Springfield, Illinois, is responsible for more than 30 postal employees.

Both Smith and Park-Fortney were qualified USPS interviewers. Both individuals had completed the USPS course which includes a section on EEO, employment discrimination and the USPS rules against discrimination.

Every applicant was asked the same questions by every interviewer and each applicant presented the same documentation for review: application, written test results and answers to interview questions. Interviewers did not review other documents, such as recommendation

8

letters even if presented by an applicant.  All employees of the USPS had access to the Employee and Labor Relations Manual ("ELM"), available online or in hard copy.  The ELM set out employee responsibilities.

Those who desired employment with the USPS took a written examination which focused on written skills, verbal skills and the applicant's health.  Applicants with the highest scores were invited for an interview.  Certain USPS positions were "transitional," meaning that they were not full-time positions with benefits.  USPS employees must meet certain physical requirements, such as: repeated bending and lifting and prolonged standing and walking; transitional employees met the same requirements as full time employees who received benefits.  USPS employees meet the public and are also required to present a positive, professional image; mail carriers are the "face" of the postal service and must be courteous, diligent and accurate in their deliveries, physically fit and capable of effective verbal communication.  The ELM included a rule that postal employees must not drink intoxicating beverages while on duty or in uniform and must not arrive at work under the influence of

intoxicating beverages.

Until 2013, transitional carriers were hired and remained transitional employees.  As the result of a national agreement, transitional employees were converted CCA's.  This change did not alter carrier responsibilities, but provided the advantage that CCA's could eventually become career postal employees.  However, this meant that all employees previously in transitional positions were terminated and were required to reapply for CCA positions.  In addition, the CCA positions were open to application by the public.

The verbal interview was important to any position in the USPS, as the interviewer generally had to provide a positive recommendation for the applicant to qualify for the position.  After interviews were complete, as part of the hiring process, the interviewers met and reviewed the applicants.  Even without a positive recommendation from the interviewer, the hiring committee could discuss the merits of an applicant and vote on whether that individual should nevertheless be hired by the USPS.

On February 14, 2013, the first date for interviews, 81 qualified

applicants were scheduled to interview for 16 open positions.  On February 14 and June 18, 2013, interviewers allowed approximately ten minutes for each interview.  It took Park-Fortney approximately 30 minutes to complete the Plaintiff's interview.

Each applicant had a file which included the applicant's job application and test scores from the written test, together with a summary of former experience.  During the interview process, interviewers took the next applicant "in line" so neither interviewer nor applicant knew in advance which applicant would be interviewed by a particular interviewer. After interviews were complete, the interview team met and discussed the qualifications of each applicant.

C. Material facts on which the Parties fail to agree

The Plaintiff alleges it was impossible for other USPS applicants to have qualifications better than the Plaintiff's in June of 2013 and, therefore, his failure to obtain a CCA position was due to retaliation.  The Defendant claims that, in June of 2013, Litterly was unaware that Plaintiff had filed an EEO claim.  Park-Fortney had been unaware of the Plaintiff's

11

EEO claim until he volunteered that he had filed such a claim. According to Park-Fortney, the USPS is a very large employment entity and numerous employees file EEO claims.

The Defendant alleges that, although the Plaintiff informed Park-Fortney he had filed an EEO claim, it made no difference to her in evaluating him for employment. The Plaintiff testified that he made a good impression on Park-Fortney. However, Park-Fortney stated that Plaintiff failed to provide her with an explanation as to why he appeared for his interview in a cut-off t-shirt and he appeared sloppy to her. Park-Fortney also believed that Plaintiff demonstrated irritation with the USPS. During the June 2013 interview, Park-Fortney found that he "railed against the USPS."

The Plaintiff volunteered to Park-Fortney that "I do drink, but I'm not drunk when I go to work." The Plaintiff also stated that he might smell of alcohol when he went to work but that did not indicate he was drunk.

When Park-Fortney inquired how the Plaintiff would handle an irate customer, the Plaintiff stated he would walk away and call a supervisor.

Park-Fortney believed the Plaintiff failed to demonstrate an ability to deal with a situation involving an irate customer.

In dealing with the public, Park-Fortney believed it was important to present a good image and a postman who had the smell of alcohol on his breath, even if he were not drunk, did not meet the image the USPS sought to convey. Park-Fortney also noted that USPS employees must drive postal vehicles and the USPS did not wish to employ workers who were under the influence of alcohol. Such an employee would present a danger to himself and to others.

### D. Plaintiff Leland Pearson's response

The Plaintiff has filed an affidavit, wherein he asks that he be allowed to show at trial that he was wrongly accused and disqualified by false allegations. He claims that the admissions by USPS representatives show that management made a mistake. Accordingly, the Plaintiff asks that he be permitted to present his case to a jury.

The Plaintiff has also filed an affidavit of Cynthia Pearson, the Plaintiff's wife. Mrs. Pearson states she has worked for the USPS for over

13

20 years.  She says that on February 14, 2013, she was told by Postmaster Geraci not to worry and that her husband would be hired.  Mrs. Pearson says Geraci told her he did not smell alcohol on the Plaintiff.

Additionally, Mrs. Pearson states that while she and her husband were shopping in December 2013, they were approached by Rob Fortney, Autumn Park-Fortney's husband.  Mrs. Pearson states that Mr. Fortney, a mail carrier, apologized to the Pearsons about the Plaintiff not being rehired after the interview with Park-Fortney.  According to Mrs. Pearson, Mr. Fortney told them that Park-Fortney's hands were tied.  She was told by upper management not to hire the Plaintiff because of the EEO in progress.

The Plaintiff has also submitted an affidavit from Aaron Reubling, who states he was the Plaintiff's supervisor in 2013.  Mr. Reubling states he wrote a letter of recommendation to rehire the Plaintiff as a CCA which was provided to Postmaster Geraci.  Mr. Reubling further states that Plaintiff did not have a negative record and has saved the USPS many hours on the street.

14

## E. Defendant's reply to Plaintiff's affidavits in response

The Defendant states that only one of the Plaintiff's affidavits is directed at the legal issue–whether there is a causal connection between the Plaintiff's prior protected activity and the USPS's decision not to hire the Plaintiff.

The Defendant notes that, although the Plaintiff claims his deposition was unfair, the Plaintiff was given an opportunity to explain whether there was a connection between his prior EEO allegation and the fact that he was not hired.  The Plaintiff responded that was his belief, based on his credentials and the amount of turnover at the post office.  The Plaintiff acknowledged that all experienced transitional employee carriers were required to reapply for the new positions of CCA.  Moreover, applications were accepted from the general public.  Accordingly, there were other applicants with experience as a mail carrier and 81 applicants were interviewed during the first round of interviews.

At the conclusion of the Plaintiff's deposition, counsel for the Defendant afforded the Plaintiff an open opportunity to discuss any

connection between his protected activity and the USPS's final determination not to rehire him as an employee.  Rather than addressing the matter, the Plaintiff terminated the deposition.  Moreover, the Plaintiff's own affidavit does not address the legal issue.

Regarding Mr. Reubling's affidavit, the Defendant notes that Susan Litterly stated that the hiring committee did not accept letters of recommendation.  Rather, the hiring committee limited its review to an applicant's test scores and the results of the interview conducted by a member of the hiring committee.  Accordingly, letters of recommendation were not reviewed and all applicants were evaluated based on the same objective material.  Mr. Reubling's affidavit thus addresses his personal view of the Plaintiff's abilities, but provides no relevant facts to connect the USPS failure to rehire the Plaintiff with his previously filed EEO complaint.

As for Mrs. Pearson's affidavit, the Defendant states that Postmaster Geraci was not on the hiring committee so he would have had no influence over hiring committee decisions.  Additionally, the alleged statement is hearsay and does not directly relate to retaliation.  Postmaster Geraci has

submitted an affidavit, wherein he states he never spoke to Cynthia Pearson about her husband's re-employment and never made a promise of re-employment to anyone, as he was not on the hiring committee.  Geraci states that the Plaintiff may have misunderstood his "promise" of re-employment, but Mrs. Pearson was not present when such a promise was miscommunicated.  According to Geraci, he encouraged the Plaintiff to reapply when he was not hired after the first set of interviews.

The Defendant objects to Cynthia Pearson's statement regarding an alleged conversation with Rob Fortney because Rob Fortney's name was not disclosed by either party as a possible witness during the lengthy USPS EEO investigation of the Plaintiff's allegations nor was his name disclosed in this matter.  Accordingly, the Court declines to consider the hearsay statements attributed to Rob Fortney, given that he was disclosed as a potential witness for the first time in response to a motion for summary judgment.

## III. LEGAL DISCUSSION

### A. Legal standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). The Court construes all inferences in favor of the non-movant. See Siliven v. Indiana Dept. of Child Services, 635 F.3d 921, 925 (7th Cir. 2011). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." See Harper v. C.R. England, Inc., 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). Because summary judgment "is the put up or shut up moment in a lawsuit," a "hunch" about the opposing party's motives is not enough to withstand a properly supported motion. See Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008). Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor. See id.

B. "Failure to hire" retaliation claim

Under Title VII, an employer may not discriminate against an employee because the employee had opposed an unlawful employment practice or "made a charge, testified, assisted, or participated in any manner

18

in an investigation, proceeding, or hearing under this subchapter." Formella v. Brennan, 817 F.3d 503, 514 (7th Cir. 2016) (quoting 42 U.S.C. § 2000e-3(a)).

An employee may prove his retaliation claims under the direct or indirect method of proof. See Formella, 817 F.3d at 514. Under the direct method, he must present evidence that he engaged in statutorily protected activity and was subject to an adverse employment action as a result. See id. He may present direct evidence, such as an admission of discriminatory intent, or circumstantial evidence in asserting a prima facie case of retaliation. See Rahn v. Bd. of Trustees of Northern Illinois University, 803 F.3d 285, 289 (7th Cir. 2015).

Circumstantial evidence of intentional retaliation includes "evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be shown." Formella, 817 F.3d at 514-15.

Pursuant to the indirect method, an employee must show the

following: (1) he engaged in protected activity; (2) he is qualified for the position or met the employer's legitimate work expectations if already employed; (3) the employer took an adverse action against the employee; and (4) the employer treated similarly situated employees who did not engage in protected activity more favorably.  See Volovsek v. Wisconsin Dept. of Agr., Trade and Consumer Protection, 344 F.3d 680, 692 (7th Cir. 2003).  If these elements are established, the burden shifts to the employer who must present a legitimate, non-discriminatory reason for the employment decision.  See id.  If the employer meets its burden, the plaintiff must then show that the proffered reason is a pretext and discrimination was the reason for the decision.  See id.

Upon reviewing the record, the Court concludes that Plaintiff is unable to establish a prima facie case of retaliation under the direct or indirect method of proof.  The Plaintiff has not established that his employer was aware of his prior EEO activity and/or took any because of it. It is undisputed that Susan Litterly did not know about the Plaintiff's protected activity.  Autumn Park-Fortney knew of the Plaintiff's prior EEO

activity only because the Plaintiff himself informed her about it.

The Plaintiff is unable to show that he did not receive a CCA position because of his protected activity. It is undisputed that Park-Fortney did not recommend the Plaintiff for employment because he made a poor showing during the interview portion of the hiring process. She stated that Plaintiff's EEO case did not affect her determination that he was not a good fit as a USPS employee. The Plaintiff offers only his own speculation, gossip and hearsay that his protected activity was the reason he did not receive the position. The Plaintiff has presented no admissible evidence which would create a factual dispute as to whether his protected activity had a role in the employment decision.

Even when all inferences are construed in his favor, the Plaintiff 's speculation or hunch about the Defendant's motives is not enough to create a genuine issue of material fact as to the reason for the employment decision. Accordingly, the Plaintiff cannot meet a prima facie case under the direct method of proof.

The Plaintiff's claims fail under the indirect method for some of the

21

same reasons.   As stated earlier, Autumn Park-Fortney testified that Plaintiff's EEO case had nothing to do with her determination that he would not be a good fit for a USPS position.

The Plaintiff has also not established that a similarly situated applicant obtained the position that he sought.  The Plaintiff admitted that he had no knowledge regarding the qualifications of other applicants.  Once again, he relies on his own speculation.  The Plaintiff's inability to meet this element is another reason his claim fails under the indirect method.

The Plaintiff's belief that he was the best candidate for the job is based entirely on his opinion of his own performance and belief that his abilities were superior to anyone else's.   This is true even though the Plaintiff acknowledged he did not know how well other employees performed.

USPS officials provided legitimate, non-discriminatory reasons for not hiring the Plaintiff.  The Plaintiff has failed to present evidence of a causal connection between his failure to obtain employment and his protected activity.  Accordingly, the Defendant is entitled to summary judgment on

the Plaintiff's retaliation claims.

Ergo, the Defendant's Motion for Summary Judgment [d/e 16] is ALLOWED.

The trial setting of June 7, 2016 is CANCELED.

The Clerk will enter Judgment in favor of the Defendant.

CASE CLOSED.

ENTER: May 23, 2016

FOR THE COURT:

/s/ Richard Mills
Richard Mills
United States District Judge

23